JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ROSINA WELSH MORENE,

**(b)** County of Residence of First Listed Plaintiff   Philadelphia County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
DEREK SMITH LAW GROUP, PLLC
1845 Walnut Street, Suite 1601, Philadelphia, PA 19103

### DEFENDANTS
THE NEIMAN MARCUS GROUP, LLC, individually and d/b/a NEIMAN MARCUS GROUP and d/b/a NEIMAN MARCUS LAST CALL and d/b/a NEIMAN MARCUS; MICHAEL PIERSON, individually; JESSIE MATTHEWS individually; TARA MCMAHON, individually; DEBORAH LEWIS, individually; and TRACEY MEYNE, individually

County of Residence of First Listed Defendant   Dallas county
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
n/a

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
  Plaintiff
- ☐ 2   U.S. Government
  Defendant
- ☒ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☐ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12101 et. seq. ("ADA"), 42 U.S.C. §§ 2000e to 20003-17("Title VII"), 29 U.S.C. § 621 et. seq. ("ADEA")
Brief description of cause:
Age Discrimination. Disability Discrimination, race/color/national origin discrimination.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
04/25/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 6609 Lansdowne Ave, Philadelphia, PA 19151

Address of Defendant: STE 29001201 ELM ST, Dallas, TX 75270-2170

Place of Accident, Incident or Transaction: 170 N. Gulph Road, King of Prussia, PA 19406
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
   (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases*:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, Caroline H. Miller, counsel of record do hereby certify:
   ☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
   ☐ Relief other than monetary damages is sought.

DATE: 04/25/2018 _____    321420
                       Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/25/2018 _____    212954   321420
                       Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

ROSINA WELSH MORENE,

              :      CIVIL ACTION
              :
        v.        :

THE NEIMAN MARCUS GROUP, LLC, individually and d/b/a NEIMAN MARCUS GROUP and d/b/a
NEIMAN MARCUS LAST CALL and d/b/a NEIMAN MARCUS; MICHAEL PIERSON, individually;
JESSIE MATTHEWS, individually; TARA MCMAHON, individually; DEBORAH LEWIS, individually; and
TRACEY MEYNE, individually

              :      NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
  and Human Services denying plaintiff Social Security Benefits.       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
  exposure to asbestos.                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
  commonly referred to as complex and that need special or intense management by
  the court.  (See reverse side of this form for a detailed explanation of special
  management cases.)                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| 04/25/2018 | Caroline H. Miller | ROSINA WELSH MORENE |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-391-4790 | 215-893-5288 | caroline@dereksmithlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
---------------------------------------------------------------------------X

ROSINA WELSH MORENE,

                                                   Civil Action No.

                      Plaintiff,

                                               **COMPLAINT**

              -against-                        Plaintiff Demands
                                                 a Trial by Jury

THE NEIMAN MARCUS GROUP, LLC, individually
and d/b/a NEIMAN MARCUS GROUP and d/b/a
NEIMAN MARCUS LAST CALL and d/b/a
NEIMAN MARCUS; MICHAEL PIERSON, individually;
JESSIE MATTHEWS, individually; TARA MCMAHON,
individually; DEBORAH LEWIS, individually; and
TRACEY MEYNE, individually;
                                   Defendants.

---------------------------------------------------------------------------X

     Plaintiff, ROSINA WELSH MORENE, as and for her Complaint against Defendants

respectfully alleges upon information and belief as follows:

### NATURE OF THE CASE

1.  Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §

    12101 *et. seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

    §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L.

    No. 102-166 ("Title VII"), 42 U.S.C. 1981; Age Discrimination in Employment Act of

    1967, 29 U.S.C. § 621 *et. seq.* ("ADEA"); and seeks damages to redress the injuries

    Plaintiff has suffered as a result of being discriminated against on the basis of her

disabilities, retaliated against by her employer for opposing and reporting such discrimination.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this court as this action involves a Federal Question under the Americans with Disabilities Act of 1990 and the Family and Medical Leave Act of 1993. The Court also has supplemental jurisdiction over the State and City Causes of Action.

3. Venue is proper in this district based upon Defendants' place of business within the County of Philadelphia, in the Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events at issue took place within the County of Philadelphia, in the Commonwealth of Pennsylvania within the Eastern District of Pennsylvania.

4. On or around July 6, 2017, Plaintiff Rosina Morene Welsh filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), which were cross filed with the state and local agencies.

5. On or around February 1, 2018, the EEOC issued Plaintiff a Right to Sue Letter.

6. This action is being commenced within ninety (90) days of Plaintiff's receipt of the EEOC Right to Sue Letter.

7. Plaintiff's claim was dual filed and is currently pending with the Pennsylvania Human Relations Commission ("PHRC").

8. As Plaintiff's claims under Pennsylvania State Law are not yet ripe for suit Plaintiff will seek to amend this Complaint to include causes of action under the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 *et. seq.* ("PHRA") once those claims are ripe.

**PARTIES**

9.   Plaintiff Rosina Morene Welsh (hereinafter also referred to as Plaintiff and/or "Welsh") is an individual black, African American female, who is a resident of the County of Philadelphia, in the Commonwealth of Pennsylvania.

10.  Defendant The Neiman Marcus Group, LLC (hereinafter referred to as Defendant and/ "The Neiman Marcus Group") is a foreign limited liability company duly existing under the laws of the state of Texas with its headquarters located at Ste 29001201 ELM ST Dallas, TX 75270-2170.

11.  At all times material, Defendant THE NEIMAN MARCUS GROUP did business as Neiman Marcus Last Call (hereinafter referred to as Defendant and/or "NEIMAN MARCUS LAST CALL") located at 18 Light Cap Road, Ste. 753, Building #07, Pottstown, PA and Neiman Marcus, located at 27 Boylston St., Chestnut Hill, PA 2167. (hereinafter referred collectively as Defendants and/or "NEIMAN MARCUS").

12.  At all times material, Defendants NEIMAN MARCUS operated a store at 170 N. Gulph Road, King of Prussia, PA 19406 (hereinafter referred to as Defendants' "King of Prussia Location").

13.  At all times material, Defendant Michael Pierson (hereinafter referred to as Defendant and/or "PIERSON") was employed as Defendants' Human Resource Manager at Defendants' King of Prussia Location.

14.  At all times material, Defendant PIERSON held supervisory authority over Plaintiff.

15.  At all times material, Defendant JESSIE MATHEWS (hereinafter referred to as Defendant and/or "MATHEWS") was employed as Defendants' Assistant Human Resource Manager at Defendants' King of Prussia Location.

16. At all times material, Defendant MATHEWS held supervisory authority over Plaintiff.

17. At all times material, Defendant Tara McMahon (hereinafter referred to as Defendant and/or "TARA") was employed as Store Manager at Defendants' King of Prussia Location.

18. At all times material, Defendant TARA held supervisory authority over Plaintiff.

19. At all times material, Defendant Debbie Lewis, (hereinafter referred to as Defendant and/or "LEWIS" was employed as Store Manager at Defendants' King of Prussia Location.

20. At all times material, Defendant LEWIS held supervisory authority over Plaintiff.

21. At all times material, Defendant Tracey Meyne (hereinafter referred to as Defendant and/or "MEYNE") was employed as Store Manager at Defendants' King of Prussia Location.

22. At all times material, Defendant MEYNE held supervisory authority over Plaintiff.

23. At all times material, Defendants NEIMAN MARCUS were the joint and solo employer of Defendants PIERSON, MATHEWS, TARA, LEWIS, and MEYNE.

24. At all times material, Defendants NEIMAN MARCUS were Plaintiff's joint and solo employer.

## **MATERIAL FACTS**

25. In or around November 1999, Plaintiff was hired by Defendants' former Store Manager, Robert Hughes (hereinafter referred to as "Mr. Hughes") who hired Plaintiff as a Sales Associate at Defendants' King of Prussia Location. As a Sales Associate, Plaintiff made approximately $15 per hour.

26. Sometime thereafter and in or around 2011 Defendant's Sport Shop Manager promoted Plaintiff to Lafayette Design Specialist at Defendants' King of Prussia Location.

27. As a Lafayette Design Specialist, Plaintiff managed the Lafayette Designer Department and in return Plaintiff received an $800 per month clothing allowance and a $200 monthly bonus.  Plaintiff's hourly rate approximated $20-22 per hour with bonuses.

**Disability Discrimination**

28. In or around January 2015 Plaintiff became sick with Hyper Thyroidism; Gastritis;  Major Depression; Bronchitis; Pneumonia; and Anxiety; all of which rendered Plaintiff hospitalized over the approximate course of the next nine (9) months – January 2015 through August 2015.

29. Symptoms of Major Depression recognized by the DSM-5 include, Feelings of sadness or unhappiness; irritability; sleep disturbances; fatigue; slow thinking and/or speech; impaired memory; unexplained aches and pains. In addition, Plaintiff experienced shortness of breath, wheezing, no appetite, coughing, insomnia and loss energy.

30. Symptoms of Anxiety include: reduced interest and/or pleasure in activities most of the day, almost every day; significant weight loss or gain not related to dieting; increased or decreased appetite; major changes in sleeping patterns; fatigue or loss of energy almost every day; feeling worthless or having excessive guilt almost every day; problems with concentration almost every day; and recurring thoughts of death (more than fear of dying), suicidal ideation, a suicide attempt, or a specific plan for committing suicide.

31. Symptoms of Bronchitis include: reduced interest and/or pleasure in activities most of the day, almost every day; significant weight loss or gain not related to dieting; increased or decreased appetite; major changes in sleeping patterns; fatigue or loss of energy almost every day; feeling worthless or having excessive guilt almost every day; problems with

concentration almost every day; recurring thoughts of death (more than fear of dying), suicidal ideation, a suicide attempt, or a specific plan for committing suicide.

32. Symptoms of Hyperthyroidism include: difficulty concentrating; fatigue; frequent bowel movements; (visibly enlarged thyroid gland) or hand tremor; heat intolerance; and increased appetite.

33. Symptoms of Gastritis include: stomach upset or pain; belching or hiccups; abdominal bleeding; nausea; vomiting; feeling of fullness or burning in the stomach; loss of appetite; and blood in vomit or stool (a sign that the stomach lining may be bleeding).

34. In or about January 2015, Plaintiff was approved for short term disability.

35. On or about May 13, 2015, Plaintiff was admitted to Main Line Health – Behaviorial Health in Bryn Mawyr, Pennsylvania.

36. Thereafter and on or about June 24, 2015, Plaintiff's physician forwarded a letter to Defendants advising Defendants that Plaintiff was continuing in-patient care at Main Line Health and that Plaintiff would be able to return to work on or about August 3, 2015 but that Plaintiff would only be able to work up to 30 hours per week until September 7, 2015. Plaintiff's physician further directed Defendants that Plaintiff would not be permitted to work after 5 p.m. until September 7, 2015.

37. In light of the above, Defendants approved Plaintiff for long-term disability in or around the end of July – early August 2015.

38. In or around October 13, 2015 and in response to Defendant PIERSON's requests for Plaintiff's medical restricted paperwork, Plaintiff returned to work and reported to Defendants   LEWIS, PIERSON, and MATHEWS and provided them with her medically

restricted schedule as ordered by Plaintiff's physician. Plaintiff's temporary restrictions included 30 hours per week and no late nights.

39. Sometime thereafter and in or around October 2015, Defendants demoted Plaintiff to a regular Sales Associate in a different department that is considered to be much busier than Plaintiff's previous department.

40. At all times material Plaintiff complained to Defendants that the new Department was putting too much of a strain on Plaintiff's health, however at no time did Defendants place Plaintiff in a less busier Department.

41. Thereafter and on or about February 17, 2016 Plaintiff's physician forwarded a letter to Defendants advising Defendants that Plaintiff was continuing in-patient care at Main Line Health – Behavioral Health and that Plaintiff would be able to return to full-time (40 hours per week) on or about June 1, 2016 with the restriction that Plaintiff not work late hours.

42. In or around March 18, 2016 until March 22, 2016, Plaintiff remained under the care of Doctors Quintiliani and DeSalvo Family Practice and cleared Plaintiff for work on or about March 23, 2016.

43. On or about October 13, 2016, Plaintiff was admitted to Quintiliani and DeSalvo Family Practice to be treated for a virus. Sometime after her admittance, Plaintiff's physician forwarded Defendants a letter stating that Plaintiff would remain under their care from October 13, 2016 until October 17, 2016 and that Plaintiff would be able to return to work on October 18, 2016.

44. Despite the fact that Plaintiff's physician restricted Plaintiff from working late nights, in or around the end of October 2016, Defendant MEYNE advised Plaintiff that Plaintiff had to work at least one late night per week due to the fact that Plaintiff's co-workers were

complaining that Plaintiff did not have to work late nights like the rest of Defendants'
employees.

45. Thereafter and in response to Defendant MEYNE's orders, Plaintiff reported to her
physician to obtain his permission for Plaintiff to work at least one late night per week in
contravention of his previous orders, which he reluctantly allowed Plaintiff to do.

46. On or around December 12, 2016 Plaintiff decided to go shopping at Defendants' Store
located at Franklin Mills Mall, however she injured her head as she walked into an
unmarked glass door without a handle.   As a result, Plaintiff presented to Einstein
Emergency Room wherein she was diagnosed with a Concussion.

47. In or around late December/early January Plaintiff presented to her Physician due to
continuing problems with her head relating to her concussion.   Upon examination
Plaintiff's physician wrote a note to Plaintiff's employer – restricting Plaintiff to only one
late night shift a week as opposed to the two late night shifts a week that Defendant had
continued to force Plaintiff to work despite previous restrictions Plaintiff's Physician had
ordered.

48. During Plaintiff's next shift, Plaintiff presented the doctors note restricting her night time
shifts to Defendants TARA and PIERSON.   However, once again Defendants ordered
Plaintiff to work two late nights per week in contravention of Plaintiff's restricted medical
schedule.

49. Almost   immediately   thereafter   Plaintiff   approached   Defendants   PIERSON   and
MATHEWS and complained that Defendants were forcing Plaintiff to work two late nights
in contravention of her doctors' orders.

50. In response, Defendants dismissed Plaintiff's complaints about Defendants coercing Plaintiff to violate her doctor's orders and directed Plaintiff to work two late nights per week as ordered by Defendant MEYNE.

51. Approximately one week later, Plaintiff again missed work due to her disability.

52. In or around the beginning of April 2017, Defendants approached Plaintiff issued Plaintiff a warning for her tardiness. In response, Plaintiff approached Defendant PIERSON and explained that often after clocking in the morning the time shown after punching in was later than the time Plaintiff actually punched in.

53. Defendant PIERSON disregarded Plaintiff's complaint and on or around April 19, 2017, Plaintiff was suspended five (5) days for being late.

54. On or about May 23, 2017, Plaintiff was wrongfully terminated for allegedly breaching Defendants' absence policy.

55. Defendants wrongfully terminated Plaintiff because of Plaintiff's disabilities, her husbands' disabilities, age, race/color/national origin, and in response to her request for a reasonable accommodation for bathroom breaks and in retaliation for Plaintiff's continued complaints of unlawful conduct.

56. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed, such that Plaintiff fretted going to work.

57. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails.

58.  As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

59.  As a result of the acts and conduct complained of herein, Plaintiff has further experienced severe emotional and physical distress.

60.  Upon information and belief, the discrimination and retaliation will continue after the date of this Charge and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

61.  As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

62. The above are just some examples of the discrimination to which Defendants subjected Plaintiff.

**<u>Associational Discrimination</u>**

63. In or around October 2015, Plaintiff approached Defendants PIERSON and MATHEWS and asked whether she could get a raise and further explained that she needed the raise because her  husband had been diagnosed with Prostate Cancer.  Defendants responded that Plaintiff could not get a raise in her current position.

64. In response and in or around early December 2015, Defendants removed Plaintiff's husband from Plaintiff's health insurance, despite the fact that Plaintiff's own health benefits were not terminated until in or around July 2017.

65. In or around the beginning of April 2017, Defendants approached Plaintiff issued Plaintiff a warning for her tardiness.  In response, Plaintiff approached Defendant PIERSON and explained that often after clocking in the morning the time shown after punching in was later than the time Plaintiff actually punched in.

66. Defendant PIERSON disregarded Plaintiff's complaint and on or around April 19, 2017, Plaintiff was suspended five (5) days for being late.

67. On or about May 23, 2017, Plaintiff was wrongfully terminated for allegedly breaching Defendants' absence policy.

68. Defendants wrongfully terminated Plaintiff because of Plaintiff's disabilities, her husbands' disabilities, age, race/color/national origin, and in response to her request for a reasonable accommodation for bathroom breaks and in retaliation for Plaintiff's continued complaints of unlawful conduct.

69. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed, such that Plaintiff fretted going to work.

70.  As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails.

71.  As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

72.  As a result of the acts and conduct complained of herein, Plaintiff has further experienced severe emotional and physical distress.

73.  Upon information and belief, the discrimination and retaliation will continue after the date of this Charge and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

74.  As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

75. The above are just some examples of the discrimination to which Defendants subjected Plaintiff.

**<u>Age Discrimination</u>**

76. In or around October 2015 Plaintiff returned to work after having been out on disability intermittently from January 2015 through October 2015 as a result of being hospitalized for Hyper Thyroidism, Gastritis, Major Depression, Bronchitis, and Anxiety.

77.  Upon returning to work, Defendants underwent a change in management and personnel. By means of example only, Defendant LEWIS who was at least approximately twenty (20) years younger than Plaintiff, was hired as Plaintiff's new department manager because Plaintiff's previous manager who was 74 years old retired in response to Defendants' refusing to allow her to take a pre-paid vacation.

78.  In addition, there were several other new Department Managers who were substantially younger than Plaintiff, such as Defendants MEYNE, age 40 and TARA both of who also served as Plaintiff's Direct Manager.

79.  Shortly after returning to work, Plaintiff was demoted to a regular Sales Associate for a different Department.  In addition, Defendants informed Plaintiff that they were going to decrease Plaintiff's rate of pay to about $10 per hour with a 3% commission.  Plaintiff

objected and asked to keep her original salary which had been approximately $15 per hour
plus 6% commission, however Defendants refused to grant Plaintiff's request.

80.  At all times material and throughout the duration of Plaintiff's employment Defendants
made comments indicating Plaintiff could not perform her job due to her age.  By means
of example only and certainly not an exhaustive list, Plaintiff's co-workers blamed Plaintiff
for clothes left in Plaintiff's department and stated in words and in substance that they did
not think Plaintiff could do her job, despite the fact that Plaintiff was not in fact responsible
for the sections complained of.

81. At all times material, Defendants MEYNE, TARA, and LEWIS would hold Department
meetings with Plaintiffs' younger co-workers and exclude Plaintiff from discussion.

82. At all times material and in response to her ostracization, Plaintiff felt embarrassed,
degraded, and humiliated.

83.  At all times material Plaintiff feared the loss of her job and health benefits since
Defendants MEYNE and TARA were Plaintiff's managers.

84.  In or around the end of October 2016, Defendant MEYNE advised Plaintiff that Plaintiff
that despite Plaintiff's medically restricted schedule, Plaintiff had to work at least one late
night per week due to the fact that Plaintiff's co-worker Sharon Betes (hereinafter referred
to as "Ms. Betes"), a white Caucasian female who worked in the same department as
Plaintiff, complained that Plaintiff did not have to work late nights like the rest of
Defendants' employees.

85. Fearing for both the loss of both her job and health benefits, Plaintiff complied with
Defendant MEYNE's orders and reported to her physician to obtain his permission for

Plaintiff to work at least one late night per week in contravention of his previous orders, which he reluctantly allowed Plaintiff to do.

86.  In or around the end of December 2016, Defendant TARA ordered Plaintiff to work two late nights per week in contravention of Plaintiff's restricted medical schedule.

87.  Almost immediately thereafter Plaintiff approached Defendants PIERSON and MATHEWS and complained that Defendants were now forcing Plaintiff to work two late nights in contravention of her doctors' orders.

88.  In response, Defendants dismissed Plaintiff's complaints about Defendants coercing Plaintiff to violate her doctor's orders and directed Plaintiff to work two late nights per week as ordered by Defendant MEYNE.

89.  Approximately one week later, Plaintiff again missed work due to her disability.

90.  In or around the beginning of April 2017, Defendants approached Plaintiff issued Plaintiff a warning for her tardiness.  In response, Plaintiff approached Defendant PIERSON and explained that often after clocking in the morning the time shown after punching in was later than the time Plaintiff actually punched in.

91.  Defendant PIERSON disregarded Plaintiff's complaint and on or around April 19, 2017, Plaintiff was suspended five (5) days for being late.

92.  On or about May 23, 2017, Plaintiff was wrongfully terminated for allegedly breaching Defendants' absence policy.

93.  Defendants wrongfully terminated Plaintiff because of Plaintiff's disabilities, her husbands' disabilities, age, race/color/national origin, and in response to her request for a reasonable accommodation for bathroom breaks and in retaliation for Plaintiff's continued complaints of unlawful conduct.

94. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed, such that Plaintiff fretted going to work.

95. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails.

96. As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

97. As a result of the acts and conduct complained of herein, Plaintiff has further experienced severe emotional and physical distress.

98. Upon information and belief, the discrimination and retaliation will continue after the date of this Charge and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

99. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

100. The above are just some examples of the discrimination to which Defendants subjected Plaintiff.

**Race, Color, and National Origin Discrimination**

101. At all times material, Defendants denied Plaintiff's request to work as an hourly employee plus commission despite the fact that other co-workers in her department that

were Caucasian were granted the option to work as an hourly employee while also receiving commission.

102.    In or around November 2014, Defendants held a fashion show wherein certain employee of Defendants were invited by Defendants' Public Relations Department to attend.  As part of the fashion show, Defendants posted numerous photos purporting to depict Charity Clothing Drives.  Despite the fact that there were approximately 100 people in the audience, there were only approximately 2 audience members who were black.  By way of furtherance, all of the people depicted in the photos receiving free clothes were African American.

103.    In response, Plaintiff felt humiliated and degraded and approached Defendant PIERSON and said in words and in substance, "If our African American customers saw this fashion show, "we [*indicating African Americans would be offended*]."

104.     Defendant PIERSON responded in words and in substance, "The event [indicating the clothing drive] was in West Philly," and further added that he would have Defendants' Public Relations Department issue an apologize to Defendants' African American Employees in a companywide meeting and that Defendants had not seen the photos purporting to depict Defendants' Clothing Drive.

105.    Approximately two months later in or around January 2015, Plaintiff became ill and was approved for short-term disability as a result of becoming sick with Hyper Thyroidism, Gastritis, Major Depression, Bronchitis, and Anxiety, all of which rendered Plaintiff hospitalized intermittently over the approximate course of the next nine (9) months – January 2015 through August 2015.

106.    Thereafter and in or around October 2015, Plaintiff returned to work under the caveat that her schedule be modified in accordance with her doctor's medically restricted schedule.

107.     Shortly thereafter and in or around October 2015, Defendants demoted Plaintiff to a regular Sales Associate in a different department that is considered to be much busier than Plaintiff's previous department.

108.    At all times material Plaintiff complained to Defendants that the new Department was putting too much of a strain on Plaintiff's health, however at no time did Defendants place Plaintiff in a less busier Department.

109.    At all times material, Defendant was treated differently than her white Caucasian co-workers in her Plaintiff's Department. By means of example only and certainly not an exhaustive list, throughout the duration of Plaintiff's employment Defendant TARA, Ms. Betman and other white Caucasian co-workers in Plaintiff's department would ostracize Plaintiff from Department meetings and complain about Plaintiff's modified schedule.

110.    In or around the end of October 2016, Defendant MEYNE advised Plaintiff that Plaintiff that despite Plaintiff's medically restricted schedule, Plaintiff had to work at least one late night per week due to the fact that Plaintiff's co-worker Sharon Betes (hereinafter referred to as "Ms. Betes"), a white Caucasian female who worked in the same department as Plaintiff, complained that Plaintiff did not have to work late nights like the rest of Defendants' employees.

111.    Fearing for both the loss of both her job and health benefits, Plaintiff complied with Defendant MEYNE's orders and reported to her physician to obtain his permission for

Plaintiff to work at least one late night per week in contravention of his previous orders, which he reluctantly allowed Plaintiff to do.

112.        In or around the end of December 2016, Defendant TARA ordered Plaintiff to work two late nights per week in contravention of Plaintiff's restricted medical schedule.

113.        Almost immediately thereafter Plaintiff approached Defendants PIERSON and MATHEWS and complained that Defendants were now forcing Plaintiff to work two late nights in contravention of her doctors' orders.

114.        In response, Defendants dismissed Plaintiff's complaints about Defendants coercing Plaintiff to violate her doctor's orders and directed Plaintiff to work two late nights per week as ordered by Defendant MEYNE.

115.        Approximately one week later, Plaintiff again missed work due to her disability.

116.        In or around April 2017, Defendant TARA approached Plaintiff and summoned her into Defendant PIERSON's office wherein Defendants complained that Plaintiff left clothes in her sector from the night before.

117.        In response, Plaintiff explained that the section Defendants complained about was the section of her white Caucasian co-worker Ms. Betman.  Plaintiff further added that Ms. Betman never cleaned her section and stated in words and in substance that "it seems like there is two sets of rules and those [*indicating Plaintiff's white Caucasian co-workers*] do their work."

118.        Defendant PIERSON responded using words to the effect of, "What are you saying – are you saying it's racially based?"  In response, Plaintiff stated in words and in substance, "It is what it is – they [*indicating Plaintiff's white Caucasian co-workers*] don't clean, they

just stand around and gossip." Defendant PIERSON disregarded Plaintiff and stated in words and in substance, "That's a strong allegation."

119.      In or around April 2017, Defendants accidentally forwarded Plaintiff a paycheck belonging to another employee who was a Caucasian female who worked in the same department as Plaintiff. Despite the fact that Plaintiff had been an employee longer than the white Caucasian co-worker, the co-worker made approximately $10 more per hour than Plaintiff in addition to a 10% commission. Plaintiff on the other hand, made approximately $10 an hour not including bonuses.

120.      Shortly thereafter Plaintiff reported to Defendants and complained that her white co-workers were making more money than she and as a result Plaintiff asked for a raise, which Defendants denied.

121.       In or around the beginning of April 2017, Defendants approached Plaintiff issued Plaintiff a warning for her tardiness. In response, Plaintiff approached Defendant PIERSON and explained that often after clocking in the morning the time shown after punching in was later than the time Plaintiff actually punched in.

122.      Defendant PIERSON disregarded Plaintiff's complaint and on or around April 19, 2017, Plaintiff was suspended five (5) days for being late.

123.      On or about May 23, 2017, Plaintiff was wrongfully terminated for allegedly breaching Defendants' absence policy.

124.      Defendants wrongfully terminated Plaintiff because of Plaintiff's disabilities, her husbands' disabilities, age, race/color/national origin, and in response to her request for a reasonable accommodation for bathroom breaks and in retaliation for Plaintiff's continued complaints of unlawful conduct.

125.       As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed, such that Plaintiff fretted going to work.

126.       As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails.

127.       As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

128.       As a result of the acts and conduct complained of herein, Plaintiff has further experienced severe emotional and physical distress.

129.       Upon information and belief, the discrimination and retaliation will continue after the date of this Charge and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

130.       As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

131.       The above are just some examples of the discrimination to which Defendants subjected Plaintiff.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

132.       Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

133.     Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter I, § 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

134.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disabilities.

135.     As such, Plaintiff has been damaged as set forth herein.

**AS A SECOND CAUSE OF ACTION FOR RETALIATION**
**UNDER THE AMERICANS WITH DISABILITIES ACT**
**(Not Against Individual Defendants)**

136.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

137.     Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter IV, § 12203, states: "(a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

138.     Defendants engaged in an unlawful discriminatory practice by discriminating against and retaliating against Plaintiff because of her opposition to Defendants' unlawful employment practices.

139.     As such, Plaintiff has been damaged as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

140.	Plaintiff repeats and reallege each and every allegation made in the above paragraphs of this Complaint.

141.	Title VII of the Civil Rights Act of 1964, as amended, states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer Practices: It shall be an unlawful employment practice for an employer -- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

142.	Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her race, color and national origin.


## AS A FORTH CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

143.	Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

144.	Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*145.*	Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et*

*seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED, BY
THE OLDER WORKERS BENEFITS PROTECTION ACT, 29 U.S.C. § 621, ET SEQ.
("ADEA")
(Not Against Individual Defendants)**

146.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

147.    Section 626 of the ADEA provides that it shall be unlawful for an employer-

(1)    to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2)    to limit, segregate, or classify their employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3)    to reduce the wage rate of any employee in order to comply with this chapter.

   a.    (b) It shall be unlawful for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.

148.    Defendants engaged in unlawful employment practices prohibited by Section 626 of the ADEA by discriminating Plaintiff because of her age.

## AS SIXTH CAUSE OF ACTION FOR RETALIATION UNDER THE ADEA
### (Not Against Individual Defendants)

149.     Plaintiff repeats and realleges each and every allegations made in the above

paragraphs of this Complaint.

150.     Section 623 (d) of the ADEA states the following:

 "It shall be unlawful for an employer to discriminate against any of his employees or

applicants for employment, for an employment agency to discriminate against any

individual, or for a labor organization to discriminate against any member thereof or

applicant for membership, because such individual, member or applicant for

membership has opposed any practice made unlawful by this section, or because such

individual, member or applicant for membership has made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or litigation under this

chapter."

151.      Defendants violated Section 623 (d) of the ADEA because Defendants

discriminated against Plaintiff due to Plaintiff's complaints of Defendants' unlawful

employment practices as previously set forth herein.


## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION AND RETALIATION
### UNDER 42 U.S.C. Section 1981
### (Not Against Individual Defendants)

152.     Plaintiff, individually and on behalf of all persons similarly situated, repeats and

realleges each and every paragraph above as if said paragraph was more fully set forth

herein at length.

153.     42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

154.     Plaintiff, as an African-American and/or black female, was discriminated against

by Defendants because of her race, color, and national origin in violation of 42 USC

Section 1981 and has suffered damages as set forth herein.

155.     Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for her opposition

to Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in

an amount to be determined at the time of trial plus interest, including but not limited to all

emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the

Court deems just and proper.

**Dated:  April 25, 2018**           **DEREK SMITH LAW GROUP, PLLC**
      **Philadelphia, PA**           *Attorneys for Plaintiffs*

By:  _____
        Caroline Hope Miller, Esq.
        1845 Walnut Street, Suite 1601
        Philadelphia, Pennsylvania 19103
        (215) 391-4790